UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION


| | | |
|---|---|---|
| ST. LOUIS PRODUCE MARKET, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Case No.  4:09CV1912 RWS |
| | ) | |
| CLARENCE HUGHES, | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM AND ORDER

This case is about a dispute over an employment separation agreement.

Defendant Clarence Hughes was employed as the property manager of Plaintiff St.

Louis Produce Market.  Hughes' job was eliminated.  The Produce Market drafted

and gave  Hughes a proposed agreement stating the terms of Hughes' separation of

employment from the Produce Market which included fourteen weeks of

severance pay.  Hughes altered the agreement by, among other changes, increasing

the amount of severance he would receive by 104 weeks.  Hughes presented the

altered agreement to the Produce Market's president for his signature.  Hughes did

not inform the president that Hughes made any changes to the agreement.  The

president signed the agreement believing it contained the terms originally

proposed by the Produce Market.  A few hours later, the president discovered that

Hughes had changed the terms of the agreement.  Despite the Produce Market's

request to void the agreement, Hughes responded that he intended to enforce the agreement as signed. The Produce Market filed this lawsuit seeking a declaration that the agreement is unenforceable because it was procured through a fraudulent and/or negligent misrepresentation by Hughes. In response Hughes has filed a counterclaim seeking to enforce the altered agreement.

Both parties have moved for summary judgment. Because it is undisputed that Hughes has not fulfilled his obligations under the signed agreement I will grant the Produce Market's motion. In the alternative, I will grant the Produce Market's motion for sanctions based on Hughes' egregious discovery abuses. Hughes pleadings in this matter will be stricken and judgment will be entered in favor of the Produce Market.

### *Legal Standard*

Summary judgment is appropriate if the evidence, viewed in the light most favorable to the nonmoving party, demonstrates that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Lynn v. Deaconess Medical Center, 160 F.3d 484, 486 (8th Cir. 1998)(citing Fed. R. Civ. P. 56(c)). The party seeking summary judgment bears the initial responsibility of informing the court of the basis of its motion and identifying those portions of the affidavits, pleadings, depositions, answers to interrogatories,

and admissions on file which it believes demonstrates the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). When such a motion is made and supported by the movant, the nonmoving party may not rest on his pleadings but must produce sufficient evidence to support the existence of the essential elements of his case on which he bears the burden of proof. Id. at 324. In resisting a properly supported motion for summary judgment, the plaintiff has an affirmative burden to designate specific facts creating a triable controversy. Crossley v. Georgia-Pacific Corp., 355 F.3d 1112, 1113 (8th Cir. 2004).

### *Background*

The St. Louis Produce Market is a wholesale produce market in St. Louis, Missouri. Defendant Hughes was employed for 19 years as the property manager for the Produce Market. His responsibilities included the daily management of all the building services for the tenants of the Produce Market.

Hughes reported to the president of the Produce Market, Bruce Rubin, and its Board of Directors. Hughes' position was eliminated and his employment was terminated on August 27, 2009. At the time of his termination, the Produce Market paid Hughes four weeks of severance pay.

On September 14, 2009, Hughes asked the Produce Market to draft a separation agreement providing six months (twenty-six weeks) of separation pay

in exchange for a comprehensive mutual release of any potential claims that parties may have had against each other. Counsel for the Produce Market drafted a separation agreement that provided fourteen weeks of separation pay in addition to the four weeks pay that Hughes had already received (for a total of eighteen weeks separation pay) at Hughes' pay rate of $1,750 per week. The draft agreement was sent to Hughes on October 2, 2009. Among other conditions, the agreement stated that the payment of the additional separation pay was contingent upon Hughes returning all of the Produce Market's property. The draft agreement contained a signature page for Bruce Rubin and a separate signature page for Hughes. Both signature pages had a notary public signature block.

On October 6, 2009, Hughes' counsel at that time, Christopher Rausch, requested counsel for the Produce Market to email him a Microsoft Word format copy of the separation agreement for his "review, comment, and proposed changes thereto." Counsel for the Produce Market sent Rausch a Word copy of the agreement by email the same day. Counsel's email informed Hughes' counsel that any proposed changes to the legal terms and conditions should be directed to counsel for the Produce Market for review. The email further required that any proposed changes in the economic terms should be negotiated between Hughes and Rubin.

Hughes discussed revisions of the agreement with his new counsel,

Christopher Swiecicki. On October 16, 2009, Swiecicki emailed a revised agreement to Hughes stating:

> As per our telephone conversation of earlier today I have revised the agreement. It is my understanding that it is your desire to directly communicate this offer to your former employer as per the directions provided to you by your former employer's counsel.

(Doc. # 135, Pl.'s Statement of Uncontroverted Facts, Ex. I)

Swiecicki, had altered several provisions of the agreement. (Id. Ex. E. at pp 169-170) These revisions included an obligation for the Produce Market to pay Hughes a lump sum of $208,000 (equal to 104 weeks of pay at the rate of $2,000 per week) in addition to the eighteen weeks of severance payment offered in the original agreement.[1] Swiecicki had also altered the release terms from a unilateral release to a mutual release. Swiecicki provided the revised agreement to Hughes. Hughes made a final change on the document by deleting the notary public signature block under the section designated for Rubin's signature. (Id.)

Although these material changes were made to the original agreement, and despite the Produce Market counsel's request to be informed of proposed changes to the legal terms and conditions, neither Hughes nor his counsel informed the Produce Market's counsel of the proposed

---

[1] This additional $208,000 was to be paid in January 2010.

changes. Instead, on October 22, 2009, Hughes appeared at the Produce

Market and went to Rubin's office with two copies of Hughes' altered

version of the agreement. Hughes had already signed the agreement and

had his signature notarized. Hughes presented two copies of the altered

agreement to Rubin and did not tell him that any changes were made to the

document. Rubin testified at his deposition that he asked Hughes whether

any changes had been made to the Produce Market's original proposed

separation agreement and Hughes responded that there had not been any

changes. (Id. Ex. F. at pp 50-51)[2]

Based on this representation, and based on Rubin's trust of Hughes

given his long term relationship with the Produce Market, Rubin signed

both copies of the revised agreement without reading it. He did not notice

that the notary signature block under his name had been removed by

Hughes. Hughes then immediately left Rubin's office with one copy of the

document, leaving the other copy with Rubin. After Hughes left, Rubin

took his copy of the revised agreement to the office of another board

member, Joan Dalco. She read the agreement and realized it had been

---

[2] In his brief in opposition to the Produce Market's motion for summary judgment, Hughes denies that he ever indicated to Rubin that there were no changes to the original agreement. But, Hughes concedes, for purposes of the Produce Market's motion for summary judgment, that Rubin's version of events is accurate. (Def.'s Mem. in Opp'n at 3)

changed.  Later that afternoon, the Produce Market's counsel sent an email

to Hughes' former counsel Rausch (apparently not knowing he was no

longer representing Hughes), asserting that Hughes fraudulently procured

Rubin's signature on the altered agreement.  (Id. Ex. A/F)  The email stated

that if the issue wasn't resolved by the next day, the Produce Market would

file a lawsuit for a declaratory judgment that the altered agreement was

void.  Hughes refused to void the agreement.

On October 27, 2009, the Produce Market filed this lawsuit in the

Circuit Court for the City of St. Louis, Missouri.  Hughes removed the case

to this Court.   The Produce Market's complaint asserts that Rubin's

signature on the altered separation agreement was procured by the negligent

or fraudulent conduct of Hughes.  The Produce Market seeks a declaratory

judgment that agreement is void.  Hughes filed a counterclaim for breach of

contract.  His position throughout this litigation is that the agreement is

valid despite the method Hughes used to secure Rubin's signature.

*The laptop*

The signed agreement contained a condition precedent which must be

met before Hughes was entitled to *any* severance payment.  That condition

precedent required Hughes to return all of the Produce Market's "Company-

owned property."  During his employment, Hughes was provided a laptop

computer owned by the Produce Market. From the beginning of this lawsuit the Produce Market asserted that Hughes never returned the laptop. Hughes' failure to return the laptop would render the Produce Market's obligations under the separation agreement unenforceable.

Throughout the course of this litigation multiple discovery hearings were held at which the issue of the existence and location of the laptop was raised. Hughes asserted that he did not know where the laptop was and that he could not recall but that he may have returned it to the Produce Market within a few days of his termination. The evidence uncovered as this litigation progressed indicated that Hughes did not return the laptop and that he knew what happened to it.

The Produce Market asserts that the laptop was never returned.

One of the Produce Market's core discovery requests was to identify the computer on which Hughes made alterations to the separation agreement and on which Hughes stored emails relevant to this lawsuit. Hughes' position throughout discovery was that he only computer he had access to was his home computer and to his niece's laptop computer. Forensic examinations of the home computer and the niece's laptop were conducted. Neither Hughes' home computer nor his niece's laptop computer contained the electronically stored information sought by the Produce Market's

discovery requests.  Hughes remained steadfast in his position that he did not have access to any other computer.

Valerie Hughes, Hughes' former wife, testified at her deposition that Hughes was using a laptop at home during the course of this litigation and that she did not recall Hughes having ever purchased a laptop.  (Id. Ex. R at pp. 16-17) As a result, the Produce Market renewed its request for Hughes to produce the Produce Market's laptop.

While the search for the laptop continued, the Produce Market discovered a material witness whom Hughes did not identify in either his Rule 26 disclosures or in his other discovery responses.  This witness was Hughes' paramour, Janet Taft.  Hughes visited Taft in Boston in September and November 2009, in the months immediately after Hughes was terminated.  (Id. Ex. O at pp. 14 and 60) Taft provided information about a laptop which Hughes used during his trips to see her in Boston.  She testified at her deposition that Hughes had a laptop that matched the description of the Produce Market's laptop.  She also testified that Hughes told her that he and Rubin were "on very good terms and Mr. Rubin trusted him because they worked together for so long ..."  (Id. at p. 27)  Hughes told Taft that Rubin trusted him and would not read the altered agreement when Hughes presented it and that Hughes was hoping to secure Rubin's

signature.  (Id. at 39)  Hughes discussed his meeting with Rubin the day the altered agreement was signed.  Hughes told Taft, "I went in there and started schmoozing and talking, and I was hoping to get [Rubin's] mind off everything."  Taft testified that Hughes was elated and could not believe that he got Rubin to sign the altered agreement.  (Id. at 78-79)

After multiple discovery hearings it became evident that Hughes had not returned the laptop to the Produce Market.  During the last two discovery hearings on October 13, 2011 and November 9, 2011, I expressed my concern that the Produce Market's laptop still had not been produced.  Given the cumulative deposition testimony by Hughes' ex-wife and his paramour, it was clear that Hughes was using the laptop during the course of this litigation.  It was also clear that the laptop contained relevant information regarding Hughes' email and the revisions to the separation agreement.  I stated at the November 9, 2011 hearing that the laptop should be located at all costs.

Miraculously, the day after the November 9, 2011 hearing, despite two years of demands to produce the laptop, Hughes managed to locate the laptop.  He asserts that on November 10, 2011, he went to the house of a former employee of the Produce Market.  The former employee was not home.  As Hughes walked around the former employee's residence he

"encountered a neighbor." He told the neighbor he was looking for the Produce Market's laptop and was willing to pay $150.00 for its recovery. Two days later, Hughes returned to the former employee's residence. Again the former employee was not home. However, the neighbor produced the Produce Market's laptop and Hughes paid him $150.00. (Id. Ex. T) Hughes delivered the laptop to the a computer services specialist chosen by the parties, IVIZE Services, on December 12, 2011. The laptop had been extensively damaged[3] and was missing its hard drive, battery and power-chord. (Id. Ex. U at pp. 56-62) None of these components have been recovered.

*Discovery abuses regarding the production of documents*

In his December 16, 2010 deposition testimony, Hughes waived all claims of privilege and stated that he had instructed his counsel not to withhold any documents in this case. Despite the waiver of all claims of privilege, Hughes and his counsel failed to turn over documents that were responsive to multiple Produce Market's document requests.

On September 21, 2010, a hearing on one of the Produce Market's motions for contempt and sanctions was held. Hughes' counsel represented

---

[3] The laptop was extensively damaged, the screen was damaged and broken and some keys were missing. Hughes testified that "It looked like somebody had just used it for target practice ..." (Id. Ex. U at pp. 47-62)

to me at that hearing that no documents have been withheld on the basis of privilege and, as a result, no privilege logs were prepared. Subsequently, it became clear to the Produce Market that responsive documents existed which were not being produced. Contrary to what he told me at the hearing on September 21, 2010, Hughes' counsel, Christopher Swiecicki, testified at his deposition on December 16, 2010, that he had documents regarding the case that he did not produce and that he was asserting the attorney-client privilege and refusing to produce the documents. Swiecicki also refused to produce a privilege log as required by the Fed. R. Civ. P 26(b)(5). (Doc. # 75, Ex. D at pp. 10-12) Similarly, Hughes's former counsel, Christopher Rausch, also testified at his deposition on December 16, 2010, that he was withholding responsive documents and that he too was refusing to produce a privilege log as required by Rule 26. (Doc. # 75, Ex. T at pp. 29-31)[4]

At a hearing on March 2, 2011, I ordered Hughes' counsel to produce complete privilege logs. On May 5, 2011, I issued an order which found that Hughes had waived the attorney-client privilege as to any documents which would be responsive to the Produce Market's document requests. I

---

[4] Indicative of his gamesmanship in this case, at a hearing on March 2, 2011, I asked Mr Swiecicki why Mr. Rausch had not produced a privilege log. Mr Swiecicki told me, "You'll have to ask Mr. Rausch." I reminded Mr. Swiecicki, that as counsel of record in this case, it was his obligation and responsibility to provide privilege logs for all responsive documents which were withheld from production. (Doc. # 93 pp. 24-26)

ordered Hughes' counsel to produce any withheld responsive documents.

Hughes' counsel produced some but not all of the responsive documents.

On October 13, 2011, I held yet another hearing regarding, among other

issues, another motion filed by the Produce Market for contempt and

sanctions for Hughes' counsel's failure to provide complete privilege logs.

I again ordered Hughes' counsel to produce a privilege log of all documents

counsel had withheld in the case and to produce all of the documents the

Produce Market requested.

On April 12, 2012, I held the final sanctions hearing in this matter.

The Produce Market presented evidence that approximately 450 documents

were still not produced by Hughes' counsel and that Hughes had not fully

complied with my previous orders for a complete production of documents.

At the close of discovery, the Produce market moved for summary

judgment. It seeks a judgment that the signed separation agreement is

unenforceable because Hughes failed to return the laptop (with its hard

drive). In addition, it seeks summary judgment that the agreement is void

because it was fraudulently induced. The Produce Market also moves to

strike Hughes' pleadings based on his abuse of the discovery process in this

matter. Hughes has filed a summary judgment seeking enforcement of the

agreement.

*Analysis*

*Failure of a condition precedent*

It is undisputed that Hughes' ability to enforce *any* of the Produce Market's obligations under the separation agreement is contingent upon Hughes returning all of the Produce Market's "Company-owned property." This case was filed on November 20, 2009. On December 12, 2011, after two years of litigation, Hughes finally returned pieces of the Produce Market's laptop. I need not decide whether this belated return of property satisfies the condition precedent clause of the agreement[5]. Nor do I need to decide whether a laptop can be considered a laptop if it is returned in an unusable, extensively damaged, condition and missing key components including its hard drive.[6] The undisputed fact is that Hughes did not return to the Produce Market "all Company-owned property."

Because Hughes did not return all of the Produce Market's property as required as a condition precedent under the agreement, I find that the signed altered separation agreement is unenforceable by Hughes.

---

[5] Although, if I were to address that question, I would find that all of the Produce Market's property had to be returned within a reasonable time period and that Hughes' belated return of parts of a laptop did not meet that requirement.

[6] Hughes received a functioning laptop with a hard drive, battery, and power chord. Hughes returned a severely damaged laptop which was missing these items. Hughes, in effect, did not return the laptop, he returned parts of a laptop.

*Fraudulent inducement*

The Produce Market also seeks a judgment that the altered agreement is void because Hughes fraudulently induced Rubin to sign the agreement. The elements which must be established to prevail on a fraudulent inducement claim under Missouri law are: (1) a representation was made; (2) that is false; (3) that is material; (4) that the speaker knows is false; (5) the speaker's intent that it be acted upon; (6) the hearer's ignorance of falsity of the representation; (7) the hearer's reliance on the representation; (8) the hearer's right to rely on the representation; and (9) injury to the hearer based on the reliance on the representation. State ex rel. PaineWebber, Inc. v. Voorhees, 891 S.W.2d 126, 128 (Mo. 1995).

That most of these elements have been established in this case is not in dispute. Despite the Produce Market's counsel's request that all legal changes to the document be submitted to him for review, Hughes' counsel did not comply with that request. Instead, Hughes and his counsel altered the agreement without telling the Produce Market. For purposes of this summary judgment motion, Hughes concedes that he falsely told Rubin that no changes had been made to the Produce Market's original separation agreement proposal. However, as the evidence clearly indicates, Hughes, with the help of his attorney, made drastic material changes to the document

that increased his severance payment by $208,000.  Hughes and his counsel do not dispute the facts that they materially changed the document and misinformed Rubin about the changes in the hope that he would sign the altered document without reading it.

The Produce Market has submitted undisputed facts which establish all of the elements of fraudulent inducement except element (8) the hearer's (Rubin's) right to rely on the representation.  Although evidence has been submitted that Rubin trusted Hughes based on his long-term employment with the Produce Market, I cannot rule as a matter of law that Rubin had a right to rely on Hughes' false representation.  The parties were not in a traditional position of trust such as a master-servant relationship or a fiduciary relationship.  At the time the altered severance agreement was signed Hughes no longer worked for the Produce Market.  Whether Rubin had a right to rely on Hughes' representations is a question of fact which must be resolved by a jury.

As a result, summary judgment would be inappropriate on the Produce Market's fraudulent inducement claim.

*The Produce Market's motion for contempt and for sanctions*

The Produce Market has filed a motion for contempt and for sanctions and seeks an order which strikes Hughes' pleadings.  The Produce

-16-

Market asserts that Hughes's actions in deliberately destroying material documents and abusing the discovery process warrants such a sanction.

On April 12, 2012, a hearing of the motion was held. The Produce Market has presented substantial evidence that Hughes has deliberately prevented the discovery of relevant, nonprivileged information throughout this litigation.

It is undisputed that Hughes destroyed his relevant cellular phone records after, and despite of, being informed by his attorney of a litigation hold on all his documents. It is also undisputed that Hughes failed to disclose, as required under Fed. R. of Civ. P. 26(a)(1), the identity of Ms. Janet Taft as an individual likely to have discoverable information. The Produce Market was able to identify Ms. Taft only through its own investigation into Hughes' reproduced phone records received from third parties. Ms. Taft provided material evidence regarding Hughes' possession of the Produce Market's laptop and of Hughes plan to get Rubin to sign the altered separation agreement without reading it.

The undisputed evidence also shows that, despite Hughes' knowledge of a litigation hold on documents, Hughes intentionally deleted relevant and material emails from his AOL account. These emails were never recovered. Hughes contends that AOL deleted these emails. However, the only

evidence submitted on this issue is that AOL does not delete its customer's emails. These lost emails would likely have supported the Produce Market's theory that Hughes intended to fraudulently induce Rubin to sign the altered separation agreement.

The whereabouts of the Produce Market's laptop is one of the most egregious discovery abuses perpetrated by Hughes. Throughout two years of this litigation he denied having the laptop after he was terminated. Yet the undisputed evidence indicates that he never returned the laptop and knew where it was during this litigation. The laptop's hard drive would likely have contained key information the Produce Market sought in discovery, that is, the revisions to the separation agreement and relevant emails. When pressured to finally produce the laptop, Hughes turned it over with an incredible story of how he found it. Moreover, the essential component of the laptop, the hard drive, the part which would contain the information sought in discovery, was missing and never recovered.

Hughes has also abused the discovery process in failing to timely produce documents in this matter. I find that Hughes has failed to comply with my orders regarding privilege logs and the production of documents in his and his attorney's possession. Hughes' counsel's contradictory representations to me regarding whether documents have been withheld

based on any privilege, his failure to provide complete privilege logs as ordered, and his failure to make a timely and complete responsive document production lead me to conclude that Hughes has intentionally obstructed document discovery in this matter. Hughes' discovery abuses have cause considerable delay in completing discovery in this matter.

I have already sanctioned Hughes on March 3, 2011 for failing to comply with discovery requests and for failing to comply with my orders relating to discovery. Hughes' discovery abuses continued after that date through his refusal to follow my orders requiring him to produce responsive documents. Hughes' belated recovery of the laptop indicates that he knew its location since the beginning of this litigation.

I have carefully reviewed Hughes' conduct in discovery throughout this litigation. Based on Hughes' deliberate and willful discovery abuses I find that an appropriate sanction is the striking of his pleadings under Fed R. Civ. P. 37(b)(2). As a result, summary judgment will be entered for the Produce Market on the alternative ground that Hughes' pleadings have been stricken in this case.

*Conclusion*

The circumstances of this case are troubling. The Produce Market offered a severance agreement to Hughes. The Produce Market, knowing

that Hughes was represented by counsel, requested that any legal alterations to the agreement be submitted to the Produce Market's counsel for further review. Alterations to the economic terms were left to negotiations between Hughes and the president of the Produce Market, Mr. Rubin. Hughes and his counsel decided not to follow this normal course of contract negotiation. Instead, to use the vernacular, they tried to pull a fast one. They materially and substantially altered the agreement and obtained Rubin's signature by deceit. When called upon to retract the altered agreement Hughes and his counsel blamed the Produce Market for being so gullible as to trust Hughes. Throughout this litigation Hughes and his counsel have impermissibly evaded the discovery process. Hughes's counsel's tone in many of his filings in this case have been taunting and unprofessional.[7] Hughes and his counsel also flaunted their obligation to preserve and produce documents and to produce privilege logs. The actions of Hughes and his counsel have been egregious and fraught with duplicity.

---

[7] As examples; in a baseless motion for sanctions filed by Hughes against the Produce Market, Hughes' counsel wrote, "Unfortunately, for Polsinelli [the Produce Market's counsel's firm] 'if you are going to throw stones don't live in a glass house.'" (Doc. # 61 at p.1 n.1). Hughes counsel stated in the footnote that the only reason he filed the motion for sanctions was as a form of payback for statements made by the Produce Market's counsel which were unrelated to the motion for sanctions. Similarly, in his response to the Produce Market's motion for summary judgment, Hughes' counsel states, "However, Christmas comes early for Mr. Hughes" as somehow a justification for the deceit employed by Hughes in obtaining Rubin's signature on the altered separation agreement. (Doc. # 146 at p. 6)

Accordingly,

**IT IS HEREBY ORDERED that** Plaintiff St. Louis Produce Market's motion for summary judgment [#133] is **GRANTED**.

**IT IS FURTHER ORDERED that** Plaintiff St. Louis Produce Market's amended motion for sanctions [#137] is **GRANTED**. Defendant Clarence Hughes' pleadings are hereby stricken in this mater.

**IT IS FURTHER ORDERED that** Defendant Hughes' motion for summary judgment [#139] is **DENIED**.


_____
RODNEY W. SIPPEL
UNITED STATES DISTRICT JUDGE

Dated this 25th day of September, 2012.